## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

MIAMI VALLEY FAIR HOUSING CENTER,     )
INC.; METROPOLITAN MILWAUKEE FAIR     )
HOUSING COUNCIL, INC.  and NATIONAL     )
FAIR HOUSING ALLIANCE, INC.     )
    )
    Plaintiffs,     )
    )     Docket No
    v.     )
    )     **COMPLAINT**
STEINER + ASSOCIATES, INC.; MEACHAM     )
& APEL, ARCHITECTS, INC.; DEVELOPMENT     )     **JURY DEMAND**
DESIGN GROUP, INC.; TORTI GALLAS AND     )
PARTNERS, INC.; MESSER CONSTRUCTION     )
CO.; CORNA/KOKOSING CONSTRUCTION     )
COMPANY; GREENE TOWN CENTER, LLC;     )
ZONA ROSA DEVELOPMENT, LLC; and     )
BAYSHORE  TOWN CENTER, LLC.     )
    )
    Defendants.     )
_____ )

## I. INTRODUCTION AND SUMMARY OF CLAIMS

1.  This civil rights action is brought by Plaintiffs Miami Valley Fair Housing

Center, Inc., and Metropolitan Milwaukee Fair Housing Council, Inc., both of which are

non-profit community organizations, and Plaintiff National Fair Housing Alliance, Inc., a

national alliance of private, non-profit, fair housing organizations, against Steiner +

Associates, Inc., a national developer of "new town centers."   The responsible

Defendants also include Meacham & Apel, Architects, Inc., Development Design Group,

Inc., Torti Gallas and Partners, Inc., Messer Construction Co., Corna/Kokosing

Construction Company, Greene Town Center, LLC, Zona Rosa Development, LLC, and

Bayshore Town Center, LLC, who, as more fully set forth herein, are the designers, builders and/or owners of the residential portions of Defendant Steiner's new town centers.

2. Plaintiffs seek monetary, declaratory and injunctive relief arising from violations of the accessibility requirements of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 (FHA), 42 U.S.C. §§3601-3619. The statute requires that certain apartment complexes built for first occupancy after March 13, 1991 be designed and constructed with accessible and adaptable features for people with disabilities.

3. Plaintiffs have identified three of Defendant Steiner's new town centers with apartment buildings built for first occupancy after March 13, 1991, that fail to meet the accessibility requirements of the FHA. They are: Gilbert Court at The Greene ("The Greene"), 4450 Buckeye Lane, Beavercreek, Ohio 45440; Lofts at Zona Rosa ("Zona Rosa"), 8640 North Dixson Ave., Kansas City, Missouri 64153; and Bayshore, 5699 North Centerpark Way, Glendale, Wisconsin 53217 (hereinafter collectively referred to as the "Tested Properties"). Upon information and belief, Defendant Steiner is also constructing or planning to construct additional covered apartments at Zona Rosa, and new town centers in Hampton, Virginia and Arlington, Texas with multifamily, residential components.

4. Defendant Steiner's new town centers are designed to emulate small towns, although they are not officially designated as such. They contain retail shopping areas as well as areas for residential, office and entertainment uses. Apartments in the Tested Properties are on floors above retail shops, which occupy the ground floor level. Each

2

building contains more than four apartments. One or more elevators serve these apartments. There are currently a total of 272 covered apartment units at the Tested Properties.

5. This Complaint alleges that, with respect to the Tested Properties and other properties not fully known to Plaintiffs, Defendants have engaged in a continuous pattern and practice of discrimination against people with disabilities in violation of the FHA by designing and/or constructing multifamily dwellings, and the common use and public use areas associated with those dwellings, in such a manner as to deny people with disabilities full access to, and the use of, these facilities as required under the FHA. Defendants' violations of these laws are serial, frequent and continue more than 17 years after the effective date of the FHA accessibility requirements. Unless restrained by this Court, Defendants will continue to violate the law.

6. Defendants' violations of the FHA design and construction requirements have serious and significant consequences for people with disabilities. As outlined below, many of Defendants' dwelling units contain inaccessible features such as bedrooms that are inaccessible to wheelchair users due to steps and narrow hall widths, environmental controls that are beyond the reach of persons in wheelchairs, thresholds that are too high for passage by a person in a wheelchair, and bathrooms with insufficient clear floor space to permit wheelchair users to enter and close the door behind them. These apartment complexes also have public and common use areas with inaccessible features such as bathrooms without protection under lavatories to prevent wheelchair users from contact with hot water and drain pipes, inaccessible hot and cold water lavatory controls, countertops in the kitchen area of the club house and the leasing office which are too high

3

for use by persons in wheelchairs, and walks around the exterior of the building which are too narrow for wheelchair passage due to wall mounted light fixtures. These blatant violations, and many others, effectively communicate that people with disabilities are not welcome in the Tested Properties.

7.  Defendants' violations of the FHA have thwarted Congressional efforts to eradicate housing discrimination against people with disabilities, rendered units and/or facilities unavailable to people with disabilities, caused Plaintiffs to divert their scarce resources in an attempt to redress these violations, and frustrated the mission of Plaintiffs. Enforcement of the FHA against Defendants is necessary because of the extensive nature of the civil rights violations at apartment complexes designed, constructed and/or owned by Defendants.

## II.  JURISDICTION AND VENUE

8.  This Court may exercise subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332, and 42 U.S.C. §§ 3613(a).

9.  Venue is proper in the Southern District of Ohio pursuant to 28 U.S.C. § 1391(b) in that Defendants are legal entities that reside in this district, the events giving rise to these claims occurred in this district, and these claims concern or otherwise relate to real property located in this district.

## III.  PARTIES

### A. Plaintiffs

10.  Miami Valley Fair Housing Center, Inc. ("MVFHC") is a private, non-profit organization, incorporated under the laws of Ohio and located in Dayton, Ohio, whose mission is to eliminate housing discrimination against all persons because of race, color,

religion, national origin, sex, disability, familial status, or any other characteristic protected under federal, state or local laws, and to ensure that housing opportunities are provided without illegal discrimination. In furthering this goal, MVFHC provides counseling, guidance and support to individuals who encounter discrimination in their search for housing. This may include investigation of their complaints. MVFHC also engages in activities designed to encourage fair housing practices by educating consumers of their rights and professionals of their responsibilities under the FHA, identifying barriers to fair housing in order to counteract and eliminate discriminatory housing practices, and by working with elected and government representatives to protect and improve fair housing laws. MVFHC also works closely with the Dayton Access Center for Independent Living, architects, builders, developers, and the Greater Dayton Apartment Association to provide ongoing outreach and education about the accessibility requirements of the FHA. MVFHC also coordinates public distribution of information on accessibility to raise the consciousness of the community on accessible design and construction.

11. The Metropolitan Milwaukee Fair Housing Council, Inc. ("MMFHC"), is a private, non-profit community organization located in Milwaukee, Wisconsin and organized under the laws of Wisconsin. It engages in several different activities to further its mission of promoting fair housing for people with disabilities and other protected classes throughout that state. These activities include the intake of fair housing complaints from the public, providing counsel to victims of discrimination, investigative services for persons who allege housing discrimination, and systemic investigations of institutional discrimination. MMFHC also provides outreach and education to the

community on fair housing issues by training and offering technical assistance to real estate professionals, property owners and managers and other members of the housing industry, publishing a quarterly newsletter, and operating an interfaith network of clergy and laity which fosters inclusive communities. MMFHC also operates a community and economic development program by working with community organizations, developers and local policy makers on the need for fair growth and the promotion of racial and economic integration; by connecting lenders with opportunities for lending and investment in central city communities; and by working to eradicate predatory lending practices. MMFHC has a work-sharing agreement with Disability Rights Wisconsin (DRW), a statewide agency that assists persons with disabilities gain access to services and opportunities through advocacy and legal expertise. MMFHC provides assistance to DRW on specific fair housing cases, technical assistance to staff and clients, and co-training on education and training programs. MMFHC also conducts focused outreach and education activities to renters and buyers with disabilities. Lastly, MMFHC has partnerships with independent living centers and other disability advocacy organizations throughout Wisconsin, providing training on the provisions of fair housing laws, technical assistance to staff and clients and enforcement services for allegations of fair housing violations.

12. NFHA is a national, non-profit public service organization incorporated under the laws of the Commonwealth of Virginia, with its principal place of business at 1212 New York Avenue, N.W., Suite 525, Washington, D.C. 20005. NFHA is a nationwide alliance of private, non-profit fair housing organizations, including organizations in 28 states. NFHA's mission includes advocating for the rights of people

with disabilities to accessible housing. NFHA is the only national organization dedicated solely to ending housing discrimination and promoting residential integration. NFHA works to eliminate housing discrimination and to ensure equal opportunity for all people through leadership, education and outreach, membership services, public policy initiatives, advocacy, investigation of fair housing violations and enforcement. One of NFHA's goals is the promotion of accessible housing; to that end, since 1992, NFHA has conducted nationwide educational campaigns to address accessibility in rental housing. NFHA is also engaged in federal court litigation to enforce the design and construction accessibility requirements of the FHA in at least ten states. *See, e.g., National Fair Housing Alliance, et al. v. A.G. Spanos Construction Co., et al.*, 2008 WL 927711 (N.D.Cal. April 4, 2008)

**B. Defendants**

13. Defendant Steiner + Associates, Inc., also doing business as Steiner Executive Group, Inc. ("Defendant Steiner"), is a Florida corporation registered to do business in Ohio, with its principal place of business at 4016 Townsfair Way, Suite 201, Columbus, Ohio 43219. It has been and continues to be engaged in the development of apartment buildings covered by the FHA including, but not limited to, the Tested Properties. In that capacity, Defendant Steiner is responsible for their design and/or construction.

14. Defendant Meacham & Apel, Architects, Inc. ("Defendant Meacham & Apel") is an Ohio corporation, with its principal place of business at 6161 Riverside Drive, Suite A, Dublin, Ohio 43017. It has been and continues to be engaged in providing architectural services for apartment buildings covered by the FHA including,

but not limited to, The Greene and Bayshore. In that capacity, Defendant Meacham & Apel is responsible for their design and/or construction.

15. Defendant Development Design Group, Inc. ("Defendant Development Design") is a Maryland corporation, registered to do business in Ohio, with its principal place of business at 7 St. Paul Street, 19th Floor, Baltimore, Maryland 21202. It has been and continues to be engaged in the provision of architectural services for apartment complexes covered by the FHA including, but not limited to, The Greene, Bayshore and Zona Rosa; and, in that capacity, it is responsible for the design and/or the construction of these apartment complexes.

16. Defendant Torti Gallas and Partners, Inc. ("Defendant Torti Gallas") is a Delaware corporation, with its principal place of business at 1300 Spring Street, Suite 400, Silver Spring, Maryland 20910. Defendant Torti Gallas was an architect for The Greene; and, in that capacity, it is responsible for the design and/or the construction of that apartment complex.

17. Defendant Messer Construction Co. ("Defendant Messer Construction") is an Ohio corporation, with its place of business at 4801 Hempsted Station Drive, Dayton, Ohio 45429. It was the contractor for The Greene; and, in that capacity, it is responsible for the design and/or the construction of this apartment complex.

18. Defendant Corna/Kokosing Construction Company ("Defendant Corna/Kokosing Construction") is an Ohio corporation, with its place of business at 6235 Westerville Road, Westerville, Ohio 43081. It was the contractor for Bayshore; and, in that capacity, it is responsible for the design and/or the construction of this apartment complex.

19. Defendant Greene Town Center, LLC ("Defendant Greene Town Center") is a limited liability company formed under the laws of Delaware, registered to do business in Ohio, with its principal place of business at 4016 Townsfair Way, Suite 201, Columbus, Ohio 43219. It was the owner of The Greene during its design and construction; and, in that capacity, Defendant Greene Town Center is responsible for the design and/or construction of this apartment complex. It is the current owner of The Greene; and, in that capacity, it is also a necessary party for relief.

20. Defendant Zona Rosa Development, LLC ("Defendant Zona Rosa") is a limited liability company formed under the laws of Delaware, with its principal place of business at 4016 Townsfair Way, Suite 201, Columbus, Ohio 43219. Upon information and belief, it was the owner of Zona Rosa during its design and construction; and, in that capacity, Defendant Zona Rosa is responsible for the design and/or construction of this apartment complex. Defendant Zona Rosa is the current owner of Zona Rosa; and, in that capacity, it is also a necessary party for relief.

21. Defendant Bayshore Town Center, LLC ("Defendant Bayshore") is a limited liability company under the laws of Delaware, with its principal place of business at 4016 Townsfair Way, Suite 201, Columbus, Ohio 43219. Upon information and belief, it was the owner of Bayshore during its design and/or construction and, in that capacity, Defendant Bayshore is responsible for the design and/or construction of this apartment complex. Defendant Bayshore is the current owner of Bayshore; and, in that capacity, it is also a necessary party for relief.

## IV.  STATUTORY AND REGULATORY FRAMEWORK

22. Congress enacted the FHA design and construction accessibility requirements as part of a comprehensive revision of the FHA to prohibit discrimination on the basis of disability.[1]  The debates and legislative history of the Fair Housing Amendments Act of 1988 reflect Congressional findings that a person using a wheelchair or other mobility aid is just as effectively excluded from the opportunity to live in a particular dwelling by steps or thresholds at building or unit entrances and by too narrow doorways as by a posted sign saying "No Handicapped People Allowed."  In considering the 1988 disability amendments to the FHA, Congress stressed that enforcement of civil rights laws is necessary to protect people with disabilities from the "devastating" impact of housing discrimination, including the "architectural barriers" erected by developers and builders who fail to construct dwellings and public use areas accessible to, and adaptable by, people with disabilities.  H.R. REP. NO. 100-711, at 25 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2186.

23.  In response to Congressional findings, the FHA mandated that every multi-family apartment building containing four (4) or more units, and built for first occupancy after March 13, 1991 ("covered multifamily dwellings"), be subject to certain design and construction requirements.  All units served by an elevator must provide:

      a.  Public-use and common-use areas that are readily accessible to, and usable by, people with disabilities;

---

[1]  The FHA uses the term "handicap" instead of the term "disability." Both terms have the same legal meaning. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998) (noting that definition of "disability" in the Americans with Disabilities Act is drawn almost verbatim "from the definition of 'handicap' contained in the Fair Housing Amendments Act of 1988").  Except when referring to the statutory language of the FHA, this Complaint uses the term "disability," which is more generally accepted.

10

b.  Doors into and within covered units that are sufficiently wide to allow passage by people in wheelchairs;

c.  An accessible route into and through the dwelling;

d.  Light switches, electrical outlets, thermostats and other environmental controls in accessible locations;

e.  Reinforcements in bathroom walls that allow for the later installation of grab bars; and

f.  Usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

24. Pursuant to Congressional authority, the United States Department of Housing and Urban Development ("HUD") promulgated final FHA design and construction regulations in January 1989, *see* 24 C.F.R. § 100.205, and published the final Fair Housing Accessibility Guidelines on March 6, 1991, *see* 56 Fed.Reg. 9472, and the *Fair Housing Act Design Manual* in August 1996, which was revised in August 1998.

25. Enforcement of the FHA accessibility requirements is an important means of ensuring equal housing opportunity to wheelchair users and other people with mobility impairments. According to the 2004 American Community Survey, conducted by the U.S. Census Bureau, more than 51 million Americans (nearly one in five) has some form of disability, and one in eight has a severe disability. Of that number, more than 2.7 million people over the age of 15 years use a wheelchair. Another 7 million use a cane, crutches, a walker or other mobility aid. These numbers are expected to increase as the population ages, wounded veterans return from Iraq and Afghanistan and other theaters of combat, and medical care allows people with disabilities to live longer and fuller lives.

11

Accessible housing is an essential means of ensuring that people with disabilities are able to fully participate in community life.

## V. FACTUAL AND LEGAL BACKGROUND

26. In the course of its advocacy on behalf of people protected by the FHA, Plaintiff MVFHC became aware that a new multifamily housing complex at The Greene did not include the required elements of accessible and adaptable design. In 2007, Plaintiff MVFHC visited The Greene and identified multiple FHA design and construction violations. MVFHC also began an investigation of other multifamily housing developed by Defendant Steiner.

27. On or about March 16, 2007, Plaintiff MVFHC filed a complaint with the United States Department of Housing and Urban Development ("HUD"), which was referred to the Ohio Civil Rights Commission. The Ohio Civil Rights Commission ("Commission") administers Ohio Revised Code § 4112.02 (H)(22), which HUD has designated to be substantially equivalent to the FHA.

28. MVFHC's complaint alleged that Defendants Steiner, Meacham & Apel, Torti Gallas, and Greene Town Center discriminated in housing on the basis of handicap because The Greene was not designed and constructed in compliance with the accessibility requirements of the federal Fair Housing Act, 42 U.S.C. § 3604(f).

29. Pursuant to the requirements of Ohio Revised Code § 4112.05, the Commission conducted and completed an investigation of the HUD complaint filed by the MVFHC. Based upon the evidence obtained in that investigation, the Commission determined on February 21, 2008 that there was probable cause to conclude that Defendants Steiner, Meacham & Apel, Torti Gallas and Greene Town Center engaged in

discriminatory housing practices in violation of Ohio Revised Code § 4112 in the design and construction of The Greene. An attempt to conciliate the matter, in accord with Ohio Revised Code § 4112.3.03(B), was unsuccessful. On March 13, 2008, the Commission issued a Complaint and notice of hearing before an administrative law judge. On and about March 24, 2008, however, Defendants Steiner, Meacham & Apel and Torti Gallas elected to have the Commission's determination of probable cause addressed in a civil action to be filed in the Ohio Court of Common Pleas, pursuant to Ohio Revised Code §§ 4112.05 and 4112.051(A)(2).

30. In 2008, Plaintiff MMFHC conducted a site visit at Bayshore and Plaintiff NFHA conducted a site visit at Zona Rosa. Those Plaintiffs identified FHA design and construction violations at Bayshore and Zona Rosa, some of which are the same as the violations found at The Greene.

31. Because these Plaintiffs seek relief at properties, which were designed and/or constructed by Defendants outside of Ohio, in addition to The Greene, Plaintiffs have joined together to file this independent civil action in the United States District Court for the Southern District of Ohio, pursuant to the Fair Housing Act, 42 U.S.C. § 3613.

32. The frequency and similarity of these violations among all properties identified in the investigations by the Plaintiffs and the Ohio Civil Rights Commission demonstrate that Defendants have engaged in a pervasive pattern and practice of designing and constructing apartment communities in violation of the FHA design and construction accessibility requirements.

33. Defendants' violations of 42 U.S.C. § 3604(f) at the Tested Properties include, but are not limited to, those outlined in paragraphs 33 through 43, below.  These are not intended as an exhaustive inventory of such violations, however.

34. Defendants have failed to design and/or construct an accessible route through covered units at The Greene, Bayshore and Zona Rosa for passage by persons with mobility impairments due to steps on the routes to the bedroom and closet.

35. Defendants have failed to design and/or construct an accessible route through covered units at The Greene for persons with mobility impairments due to the narrow width of the hall to the bedroom and closet.

36. Defendants have failed to design and/or construct an accessible route through covered units at The Greene for passage by persons with mobility impairments due to the excessive height of the leading edge of the threshold at the interior side of the patio door.

37. Defendants have failed to design and/or construct environmental controls in covered units at The Greene and Bayshore that are within the reach range of persons in wheelchairs.

38. Defendants have failed to design and/or construct usable bathrooms in covered units at The Greene with sufficient clear floor space to allow wheelchair users to enter and close the door behind them.

39. Defendants have failed to design and/or construct usable bathrooms in public and common use areas in The Greene and Zona Rosa by not providing pipe protection at the knee space below the lavatory to prevent burns and abrasions to people in wheelchairs and by not locating mirrors at a height which would allow persons in wheelchairs to use them.

40.  Defendants have failed to design and/or construct usable bathrooms in the fitness center and community room of The Greene by providing knob-type faucet controls which require a tight grasping, pinching, or twisting of the wrist to operate them; and by providing insufficient unobstructed turning space for persons in wheelchairs.

41. Defendants have failed to design and/or construct an accessible route to the drinking fountain outside the fitness center at The Green by failing to provide sufficient centered, clear floor space for wheelchair users at the drinking fountain.

42. Defendants have failed to design and/or construct an accessible route to public and common use areas at The Greene by providing excessive abrupt level changes at the thresholds at the community room entry door, the east patio entry door, the primary entry door to the leasing offices off the parking garage, the west patio entry door, and the storage room adjacent to the leasing office.

43.  Defendants have failed to design and/or construct an accessible route to work surfaces in public and common use areas at The Greene by providing counter tops in the kitchen area of the club house and leasing office which are too high for use by persons in wheelchairs.

44. Defendants have failed to design and/or construct an accessible route to public and common use areas at The Greene by providing a route of insufficient width for wheelchair passage due to protruding wall mounted light fixtures on the walk around the exterior of the building.

## VI.  INJURY TO PLAINTIFFS

45. As a result of Defendants' actions described above, MVFHC, MMFHC and NFHA have been directly and substantially injured.  The Defendants' actions have frustrated the Plaintiffs' missions to eradicate discrimination in housing, and undermined the effectiveness of the programs and services they provide, including encouraging integrated living patterns, providing assistance to individuals and families looking for housing or affected by discriminatory housing practices, and eliminating discriminatory housing practices.

46. In addition, MVFHC, MMFHC and NFHA have invested considerable time and effort in education about the importance of accessible housing for people with disabilities, in an attempt to secure compliance by entities involved in the design and construction of covered multi-family dwellings.  Each time Defendants designed and constructed covered dwellings that did not comply with the FHA, Defendants frustrated the missions of MVFHC, MMFHC and NFHA, inasmuch as it served to discourage people with disabilities from living at that dwelling, and encouraged other entities involved in the design and construction of covered units to disregard their own responsibilities under the FHA.

47. Defendants' continuing discriminatory practices have forced MVFHC, MMFHC and NFHA to divert scarce resources to identify, investigate and counteract the Defendants' discriminatory practices, and such practices have frustrated Plaintiffs' other efforts against discrimination, causing Plaintiffs to suffer concrete and demonstrable injuries.

48. MVFHC, MMFHC and NFHA have conducted site visits, investigations, and surveys or tests at the Tested Properties, resulting in the diversion of their resources in terms of staff time and salaries and travel and incidental expenses that they would not have had to expend were it not for Defendants' violations.

49. In doing the acts or in omitting to act as alleged in this Complaint, each employee or officer of each Defendant was acting in the course and scope of his or her actual or apparent authority as agent, or the alleged acts or omissions of each employee or officer as agent was subsequently ratified and adopted by each Defendant as principal.

50. In carrying out the aforementioned actions, Defendants acted intentionally, willfully, and with callous and reckless disregard of the rights of Plaintiffs and people with disabilities to accessible housing, pursuant to the FHA. Defendants knew or should have known of their design and construction obligations with respect to these properties.

51. Until remedied, Defendants' unlawful, discriminatory actions will continue to injure MVFHC, MMFHC and NFHA by:

    a.  Interfering with efforts and programs intended to bring about equality of opportunity in housing;

    b.  Requiring the commitment of scarce resources, including substantial staff time and funding, to investigate and counteract Defendants' discriminatory conduct, thus diverting those resources from the Plaintiffs' other activities and services, such as education, outreach and counseling; and

    c.  Frustrating MVFHC, MMFHC and NFHA's missions and purposes of promoting the equal availability of housing to all persons without regard to any protected category, including disability.

## VII. LEGAL CLAIMS

(Federal Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*)

52. Plaintiffs restate the allegations of Paragraphs 1-51, and incorporate them herein.

53. Each of the Tested Properties specified in paragraph 3 herein contains residential apartment units that are "dwellings" within the meaning of 42 U.S.C. § 3602(b).

54. At the Tested Properties, each unit on floors in buildings serviced by an elevator are "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f)(7)(A) and each is subject to the requirements of 42 U.S.C.§ 3604(f).

55. Through the actions and inactions described above, Defendants have:

    a.  Discriminated in the rental of, otherwise made unavailable, or denied dwellings to individuals because of handicap in violation of 42 U.S.C. § 3604(f)(1);

    b.  Discriminated against persons in the terms, conditions, or privileges of rental, or in the provision of services or facilities in connection with the rental of a dwelling, because of handicap, in violation of 42 U.S.C. § 3604(f)(2); and

    c.  Failed to design and construct dwellings in compliance with the requirements mandated by 42 U.S.C. § 3604(f)(3)(C), and the applicable regulations.

56. The actions complained of constitute a continuing pattern and practice of repeated and continuing FHA violations in that Defendants have engaged in a systematic

and consistent pattern and practice of designing and constructing covered multifamily dwellings in violation of 42 U.S.C. §§ 3601-3619.

57. As a result of Defendants' wrongful conduct, MVFHC, MMFHC and NFHA has been injured by discriminatory housing practices and are, therefore, "aggrieved persons" as defined by 42 U.S.C. § 3602(I)(1).

58. Defendants' conduct, as described above, was intentional, willful and taken in conscious disregard for the rights of others.

## VIII.  JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury.

## IX.  PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiffs pray that this Court grant judgment in their favor, and against Defendants, as follows:

A.  Declare, pursuant to 28 U.S.C. § 2201, that Defendants' practices and actions, as alleged herein, violate the FHA and the applicable regulations;

B.  Enjoin, pursuant to 42 U.S.C. § 3613(c)(1)(a), Defendants, their officers, directors, employees, agents, successors, assigns, and all other persons in active concert or participation with any of them, both temporarily during the pendency of this action, and permanently, from:

1.    constructing any covered multifamily housing and/or common areas that, in any way, fail to comply with the FHA and the applicable regulations, including the acquisition of any building or construction permits, or certificates of occupancy;

2. selling any building containing a covered unit until the entry of final relief herein, or until the completion of such retrofit alteration to covered units as may be ordered by the Court;

3. failing or refusing to bring the covered dwelling units and the public use and common use areas at the Tested Properties into compliance with the requirements of 42 U.S.C. § 3604(f)(3)(C), and the applicable regulations;

4. failing or refusing to design and construct any covered multifamily dwellings in the future in compliance with the FHA and applicable regulations.

5. discriminating in the rental of, otherwise making unavailable, or denying dwellings to individuals because of their handicap in violation of 42 U.S.C. § 3604(f)(1); and

6. discriminating against persons in the terms, conditions, or privileges of rental, or in the provision of services or facilities in connection with the rental of a dwelling, because of handicap, in violation of 42 U.S.C. § 3604(f)(2).

C. Enjoining Defendant Steiner, its officers, directors, employees, agents, successors, assigns, and all other persons in active concert or participation with any of them from failing or refusing to:

1. survey each and every covered, multifamily dwelling in which Defendant Steiner had any role in its design and/or construction since March 13, 1991, other than the Tested Properties, or, if not yet

20

constructed, review the building plans, to identify any and all violations of 42 U.S.C. §3604(f)(3)(C);

2. report to the Court any noncompliance with the accessibility requirements of the FHA at these properties; and

3. with respect to any violations found, retrofit the covered multifamily dwelling units, and the public accommodations areas, or, if not yet constructed, alter the building plans, to bring them into compliance with the requirements of 42 U.S.C. §3604(f)(3)(C);

D. Award such damages as would fully compensate Plaintiffs for their injuries incurred as a result of Defendants' discriminatory housing practices and conduct, pursuant to 42 U.S.C. § 3613(c)(1)(a);

E. Award such punitive damages against Defendants as is proper under law, pursuant to 42 U.S.C. § 3613(c)(1)(a);

F. Award Plaintiffs their costs and attorneys' fees incurred herein, pursuant to 42 U.S.C. § 3613(c)(2); and

G. Award Plaintiffs such other relief as this Court deems just and proper.

Dated this **29** day of April 2008.

Respectfully Submitted,

*[signature]*

Stephen M. Dane
  Ohio Bar No. 0013057
Thomas J. Keary
Michael Allen
  Pending admission *pro hac vice*

RELMAN & DANE, PLLC
1225 19th Street, N.W., Suite 600
Washington, D.C. 20036
(202) 728-1888
(202)728-0804 (facsimile)
mallen@relmanlaw.com

Attorneys for Plaintiff