**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

MIAMI VALLEY FAIR HOUSING      :       Case No. 3:08-cv-150
CENTER, INC., *et al.*,

           District Judge Thomas M. Rose
        Plaintiffs      :       Magistrate Judge Michael J. Newman

     -vs-
                        :
STEINER & ASSOCIATES, INC., *et al.*,

        Defendants.      :

_____

**REPORT AND RECOMMENDATION[1]**
_____

     This is a Fair Housing Act case brought by several non-profit advocacy groups against the owners of multi-family apartment buildings located in town centers in Ohio, Wisconsin and Missouri, as well as the developer, contractors and architects involved in the construction of the buildings. Now before the Court are motions to dismiss for lack of personal jurisdiction by thirteen Third-Party Defendants who were involved in the construction of apartment buildings located in Missouri and Wisconsin, and provided no services in Ohio. For reasons stated more fully below, the Court finds it lacks personal jurisdiction over these thirteen Third-Party Defendants.

     The following apartment buildings are at issue: Gilbert Court at the Greene in Beavercreek, Ohio; Lofts at Zona Rosa in Kansas City, Missouri; Bayshore in Glendale, Wisconsin; and two unnamed town centers located in Hampton, Virginia and Arlington, Texas -- which, at the time of the complaint's filing, were in the planning and/or construction phases

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

(collectively "Apartment Complexes").[2]  *See* Complaint (doc. 1) ¶ 3.  Plaintiffs Miami Valley Fair Housing Center, Inc.; Metropolitan Milwaukee Fair Housing Council, Inc.; and National Fair Housing Alliance, Inc.[3] allege that the Apartment Complexes are not "designed and constructed with accessible and adaptable features for people with disabilities" -- *e.g.,* they allegedly have narrow hallways, difficult-to-reach environmental controls, and insufficient floor space in the bathrooms -- in violation of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("FHA"),42 U.S.C. §§ 3601-361.  *Id.* ¶¶ 2, 33-44.  Defendants include: a national developer of new town centers, Steiner + Associates, Inc. ("Steiner"); an architect for the Greene and Bayshore, Meacham & Apel, Architects, Inc. ("Meacham"); an architect for the Greene, Torti Gallas & Partners, Inc.; a contractor for the Greene, Messer Construction Co. ("Messer"); the owner of the Greene Town Center, Greene Town Center, LLC ("Greene"); the owner of the Zona Rosa Town Center, Zona Rosa Development, LLC ("Zona Rosa"); and the owner of the Bayshore Town Center, Bayshore Town Center, LLC ("Bayshore").[4]  *Id.* ¶¶ 13-21.

Some Defendants (Steiner, Bayshore, Greene, Zona Rosa, Meacham, and Messer), in turn, filed third-party complaints against 27 entities that had allegedly contributed in some manner to the construction of the Apartment Complexes at the Greene, Zona Rosa or Bayshore. *See* docs. 57-60.   Defendants/Third-Party Plaintiffs assert breach of contract and negligence

---

[2] These town centers "contain retail shopping areas as well as areas for residential, office and entertainment uses."  Doc. 1 ¶ 4.  The apartments are located above the retail shops.  *Id.*  Each building contains more than four apartments.  *Id.*  There are a total of 272 apartment units at issue in this case.  *Id.*
[3] Miami Valley Fair Housing, Inc. and Metropolitan Milwaukee Fair Housing Council, Inc. are non-profit community organizations, and National Fair Housing Alliance, Inc. is "a national alliance of private, non-profit, fair housing organizations."  Doc. 1 ¶ 1.
[4] Development Design Group, Inc. and Corna/Kokosing Construction Co. were also named as Defendants, but have subsequently been dismissed.  *See* doc. 486.

claims, and also seek indemnity and contribution for any damages awarded to Plaintiffs against Third-Party Defendants.  *See id.*

All the named Third-Party Defendants filed motions to dismiss or motions for judgment on the pleadings on the grounds that the third-party indemnification and contribution claims were preempted by the Fair Housing Act.  *See* docs. 339, 340, 350, 373, 397.  Some Third-Party Defendants additionally moved to dismiss based on a lack of personal jurisdiction.  *See* docs. 141, 169, 179, 180, 194, 200, 209, 245, 247, 336.  In May through September 2010, Magistrate Judge Ovington issued five Reports and Recommendations ("R&R's"), recommending that all Third-Party Defendants be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(6) or 12(c) because: (1) the FHA does not authorize claims for indemnification and/or contribution; and (2) the remaining breach-of-contract and negligence claims essentially reiterate the indemnification and contributions claims, and to the extent they may be independent claims, they are not proper third-party claims under Federal Rule of Civil Procedure 14.  *See* docs. 339, 340, 350, 373, 397.  The Court adopted all five R&R's in their entirety.  *See* docs. 371, 376, 398.  On September 21 2010, the Court certified its Orders adopting Magistrate Judge Ovington's five R&R's as final and appealable.  *See* doc. 401.  Defendants/Third-Party Plaintiffs Steiner, Greene, Zona Rosa, Bayshore, Meacham, and Messer timely appealed those Orders to the Sixth Circuit. Doc. 402.  (Defendant Meacham subsequently voluntarily withdrew from the appeal.  *See* doc. 428.)

On May 21, 2012, the Sixth Circuit vacated the Court's Orders adopting Magistrate Judge Ovington's R&R's for failure to first rule on the lack-of-personal-jurisdiction defenses, and remanded the case to this Court to consider those jurisdictional issues.  *Miami Valley Fair Hous. Ctr., Inc. v. Steiner & Assocs.*, No. 10-4191, 2012 U.S. App. LEXIS 10316,  2012 WL

3

1815964 (6th Cir. May 18, 2012) (doc. 437).  Accordingly, the Court issued an Order (1) allowing Third-Party Defendants who had previously filed a dismissal motion -- premised, in whole or in part, upon a potential lack-of-personal-jurisdiction -- to file a supplemental brief; and (2) allowing Third-Party Defendants who had not previously raised lack-of-personal jurisdiction as a defense to file a dismissal motion on that basis.  *See* doc. 438.  Several Third-Party Defendants filed new motions to dismiss based on a lack of personal jurisdiction.  *See* docs. 443, 444, 446, 447, 448.  Additionally, some parties filed supplemental memoranda in support of previously-filed motions to dismiss for lack of personal jurisdiction.  *See, e.g.*, docs. 457, 459, 463, 464, 471, 475.

After the briefing schedule had ended, the Court issued an Order advising all parties that the following Third-Party Defendants had raised personal jurisdiction defenses, either before or after the Sixth Circuit remand: Alpine Insulation Co., Inc. (doc. 443); Mega Industries Corporation (doc. 444); Roman Electric Co., Inc. (doc. 446); Donovan & Jorgenson, Inc. (docs. 447, 448); Hunzinger Construction Co. (doc. 141); Alpine Plumbing, Inc. (doc. 169)[5]; Mandel Development, Inc. (docs. 179, 180); Mandel Group, Inc. (docs. 179, 180); Blake-Stevens Wood Flooring, Inc. (doc. 194); Lakeside Stoneworks, LLC (doc. 200); Barsto Construction, Inc. (doc. 209); Rob Ben Construction, LLC (doc. 245); Walton Construction Co., LLC (doc. 247); and Miller's Carpet Co., Inc. (doc. 336) (collectively "Third-Party Defendants").  Doc. 474.  All parties were then afforded ten days to notify the Court if they had raised such a defense, but were not listed in the Court's Order.  *See id.*  No parties so notified the Court.  The Court now considers those motions to dismiss for lack of personal jurisdiction.[6]

---

[5] Third-Party Defendant Alpine Plumbing was subsequently dismissed from this case.  *See* docs. 489, 494.  Therefore, the Court will not address Alpine Plumbing's motion to dismiss, as it is now moot.

[6] Furthermore, the Court did an extensive review of every filing on the docket sheet (which contained more than 480 documents) to determine exactly which parties were in the case after the Sixth Circuit's

4

## I.  Waiver Arguments

As a preliminary matter, the Court will address the issue of waiver before turning to the merits of Third-Party Defendants' arguments that personal jurisdiction over them is lacking.

### A.  Procedural Waiver

Third-Party Plaintiffs raise two procedural waiver arguments.  First, Steiner, Zona Rosa, and Bayshore filed a supplemental memorandum in opposition to the motions of Third-Party Defendants Hunzinger Construction, Barsto Construction, Rob Ben Construction, and Walton Construction after the Sixth Circuit's remand.  *See* doc. 457.  They argue that these Third-Party Defendants submitted to the personal jurisdiction of this Court by filing a general notice of appearance.  *See id.*  In making this assertion, they rely on *Gerber v. Riordan*, 649 F.3d 514 (6th Cir. 2011), where the Sixth Circuit held that, under the facts of that case, the defendants waived their personal jurisdiction defense when they filed general notices of appearance, among other activities.  *Id.* at 519-20.

The Court finds the Sixth Circuit's holding in *Gerber* is inapplicable to this case.  First, *Gerber* was decided on August 18, 2011 -- and these Third-Party Defendants filed their notices of appearance in late 2009/early 2010.  *See* docs. 87, 136, 189, 196, 218, 228.  In 2010, there was Sixth Circuit case law holding that special appearances were unnecessary to avoid a waiver of a personal jurisdiction defense.[7]  *See Cnty. Sec. Agency v. Ohio Dept. of Commerce*, 296 F.3d 477, 483 (6th Cir. 2002) ("In order to object to a court's exercise of personal jurisdiction, it is no

---

remand.  *See* doc. 486.  In that Order, the Court advised all Third-Party Defendants that they remain in this case upon the Sixth Circuit's vacating of the Court's Orders adopting Magistrate Judge Ovington's five R&R's.  *See id.*

[7] Hunzinger provides an extensive review of the case law in all federal circuits -- showing that the consensus is that the old distinction between general and special appearances has been abolished.  *See* doc. 459 at PageID 5131-34.  Hunzinger further points out that Standard Form AO 458 (the notice of appearance form used in all U.S. District Courts) does not distinguish between general and special appearances.  *See id.* at PageID 5134.

longer necessary to enter a 'special appearance'"); *Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 820 n.4 (6th Cir. 1981) ("We note that a 'special appearance' to challenge jurisdiction is no longer necessary under the Federal Rules. A defendant must attack the validity of service of process pursuant to Rule 12(b)").

Furthermore, the facts in *Gerber* are distinguishable from those at issue here.  In *Gerber*, the Sixth Circuit emphasized that the determinative factor is whether the defendant gave the plaintiff "a reasonable expectation that [the defendant] will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." *Id.* at 519.  The *Gerber* Defendants' level of participation was quantitatively and qualitatively different than these Third-Party Defendants -- *i.e.,* before raising a lack of personal jurisdiction defense, the *Gerber* Defendants filed motions to stay litigation pending arbitration, to vacate the default judgment, and to enforce a settlement agreement; made their Rule 26 discovery responses; and participated in a pretrial conference, among other activities. *Id.* at 518-19.  In contrast, each of these Third-Party Defendants filed their notices of appearances (which simply identified their counsel) and shortly thereafter moved to dismiss for lack of personal jurisdiction.[8]  Accordingly, the Court finds that Third-Party Plaintiffs did not have a "reasonable expectation" that these Third-Party Defendants would defend the suit on the merits.  Likewise, these entries of a general appearance did not cause the Court to undergo any unnecessary efforts.  Therefore, Third-Party Defendants Hunzinger Construction, Barsto Construction, Rob Ben

---

[8] Hunzinger filed a notice of appearance on January 13, 2010 (doc. 136), and a motion to dismiss on jurisdictional grounds on January 15, 2010 (doc. 141); Barsto Construction filed a notice of appearance on February 3, 2010 (doc. 189), and moved to dismiss on jurisdictional grounds on February 11, 2010 (doc. 209); Rob Ben Construction filed notices of appearance on February 12, 2010 (doc. 218) and February 17, 2010 (doc. 228), and filed a motion to dismiss on February 23, 2010 (doc. 245); and Walton Construction filed a notice of appearance on February 4, 2010 (doc. 196), and moved to dismiss on jurisdictional grounds on February 24, 2010 (doc. 247).

Construction, and Walton Construction did not waive their personal jurisdiction defense by filing general notices of appearance.

Second, Third-Party Plaintiffs argue that Third-Party Defendants Alpine Insulation, Mega Industries, Roman Electric, and D&J (who filed dismissal motions on jurisdictional grounds after the Sixth Circuit's remand) waived their personal jurisdiction defenses because their initial motions to dismiss did not raise such a defense.  *See* doc. 453 at PageID 5022-23; doc. 454 at PageID 5039-42; doc. 455 at PageID 5072-73; doc. 456 at PageID 5090-91.  The Court finds this argument unavailing.  These Third-Party Defendants properly filed their dismissal motions following remand and in compliance with the Court's Order allowing all Third-Party Defendants, including those who did not previously move for dismissal on the grounds of personal jurisdiction, to file such a motion.  *See* doc. 438.

### B.  Substantive Waiver

Additionally, the Court finds Third-Party Plaintiffs' substantive waiver argument unavailing.  They claim that Third-Party Defendants waived their rights to contest personal jurisdiction based on identical "joinder" clauses in their contracts, which provide as follows:

> The Contractor [Barsto Construction, Walton Construction, Miller's Carpet, Lakeside Stoneworks, Rob Ben Construction and Alpine Insulation, *etc.*] waives all objections to joinder of the Contractor as a party to any mediation or litigation related to this Project, in which the Owner [Zona Rosa or Bayshore] is joined or is otherwise positioned as a party and in which the Contractor's conduct or his performance of services in any way relevant to the subject of the dispute.

*See, e.g.,* doc. 269 at PageID 2671-72; doc. 285 at PageID 2864-65; doc. 455 at PageID 5073-75; doc. 456 at PageID 5091-92.  Third-Party Plaintiffs do not cite to any supporting case law in which a court has found such a provision to constitute a waiver of personal jurisdiction, however.

Contrary to Third-Party Plaintiffs' position, the Court does not read this joinder clause as a waiver of a personal jurisdiction defense.  Joinder is controlled by Federal Rules of Civil

Procedure 19 and 20, whereas Third-Party Defendants were brought into this lawsuit under Federal Rule of Civil Procedure 14. *See Brooks v. Hickman*, 101 F.R.D. 16, 17-18 (W.D. Pa. 1984). Moreover, on the same page of the contract where the joinder clause is located, there is a conflicting clause in which the parties agree that, if they are unable to resolve their disputes through negotiation, any disputes or actions arising out of their agreement shall be brought in Missouri (for the Zona Rosa Project) or Wisconsin (for the Bayshore Project). *See, e.g.,* doc. 209-2 at PageID 1720; doc. 286-1 at PageID 3015. Accordingly, the Court finds the joinder clause is ambiguous, and should be construed against the drafters -- *i.e.*, against Third-Party Plaintiffs. *See Mead Corp. v. ABB Power Generation, Inc.*, 319 F.3d 790, 797-98 (6th Cir. 2003) (applying Ohio law); *Bd. of Trs. Sabis Int'l Sch. v. Montgomery*, 205 F. Supp.2d 835, 846 (S.D. Ohio 2002) (Marbley, J.).

## II.  Relevant Jurisdictional Facts

In deciding whether personal jurisdiction exists, the Court keeps the following principles in mind. Third-Party Plaintiffs bear the burden of establishing the existence of jurisdiction over Third-Party Defendants.[9] *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989). In this case, where no discovery or evidentiary hearing was conducted, Third-Party Plaintiffs "need only make a *prima facie* showing of personal jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (italics added). They can meet this

---

[9] There are three third-party complaints in this case filed by (1) Defendants/Third-Party Plaintiffs Steiner, Greene, Zona Rosa, and Bayshore collectively (doc. 57); (2) Defendant/Third-Party Plaintiff Meacham (doc. 58); and (3) Defendant/Third-Party Plaintiff Messer (doc. 60). Some Third-Party Defendants are named in both third-party complaints of Steiner, Greene, Zona Rosa and Bayshore (doc. 57) and also of Meacham (doc. 58). However, there are different Third-Party Defendants named in Messer's third-party complaint (doc. 60) -- none of which are at issue in this Report and Recommendation, as they have not moved to dismiss for lack of personal jurisdiction. Throughout this Report and Recommendation, the Court will refer to Steiner, Greene, Zona Rosa, Bayshore and Meachm collectively as "Third-Party Plaintiffs." The Court will likewise refer to all Third-Party Defendants who assert a personal jurisdiction defense collectively as "Third-Party Defendants."

8

burden by "establishing with reasonable particularity sufficient contacts between [Third-Party Defendants] and the forum state to support jurisdiction." *Id.* (citation omitted).  In determining whether Third-Party Plaintiffs have met their burden, the Court must view the pleadings and affidavits in a light most favorable to them.  *Id.*

Having carefully reviewed the individual memoranda regarding personal jurisdiction, the Court recognizes a thematic scheme to the facts concerning all Third-Party Defendants.  None have any offices, employees, bank accounts, real or personal property, or any other assets located in Ohio; none regularly solicit, advertise or transact business in Ohio; and none were involved in the construction of the Greene in Ohio.[10]  Instead, Third-Party Plaintiffs attempt to assert jurisdiction over these parties premised entirely on their contracts with Steiner, Bayshore or Zona Rosa -- entities that happen to have their principal places of business in Columbus, Ohio -- to perform construction-related services in a state other than Ohio (*i.e.*, Wisconsin or Missouri).  In all situations, the record shows that Third-Party Defendants did not reach out to Ohio to do business with Third-Party Plaintiffs; but, rather, that Third-Party Plaintiffs or a local construction manager initiated the contract dealings.  While an agent of a Third-Party Defendant occasionally visited Ohio, it was merely for the convenience of the Ohio entities, or to tour a model town center in Columbus, Ohio.  In fact, employees of Bayshore and Zona Rosa commuted to, and worked at, the respective construction sites in Wisconsin and Missouri.  *See, e.g.*, doc. 266-1 ¶ 10; doc. 269-1 ¶ 9; doc. 285-3 ¶ 9; doc. 299-1 ¶ 8.  Further, all of these contracts contain

---

[10] Third-Party Plaintiffs point out that Donovan & Jorgenson, Inc. ("D&J") only denies contacts with Ohio for the past ten years.  *See* doc. 453 at PageID 5026.  They claim "the qualification would not be there unless necessary to avoid disclosure of prior Ohio contacts."  *Id.*  However, it is irrelevant whether D&J may have had contacts with Ohio over ten years ago.  Third-Party Plaintiffs have not shown there is general jurisdiction over D&J, and to assert specific jurisdiction, the lawsuit must "arise out of" the contacts with Ohio.  *See infra*; *see also* Ohio Rev. Code § 2307.382(C).  This lawsuit does not arise out of D&J's potential unknown contacts with Ohio that occurred more than ten years ago.

Wisconsin or Missouri choice-of-law provisions. *See, e.g.*, doc. 179-2 at PageID 1160; doc. 194-2 at PageID 1437; doc. 299-1 at PageID 3158.

The Court has identified two categories of Third-Party Defendants. The first category will be referred to as the "direct contractors" because they worked and communicated directly with the town center owner (Bayshore or Zona Rosa). They include Mandel Development, Inc.; Mandel Group, Inc.; Hunzinger Construction Co.; Barsto Construction, Inc.; Walton Construction Co., LLC; and Mega Industries Corp. The second category consists of "sub-contractors" who had very little contact with the town center owner, but worked mostly with the construction manager, and includes Miller's Carpet Co., Inc.; Lakeside Stoneworks, LLC; Rob Ben Construction, LLC; Blake-Stevens Wood Flooring, Inc.; Roman Electric, Inc.; Alpine Insulation Co., Inc.; and Donovan & Jorgenson, Inc.

## A. "Direct Contractors"

Hunzinger Construction Co. ("Hunzinger") falls into the first category of "direct contractors." Hunzinger is a Wisconsin corporation with its principal place of business in Brookfield, Wisconsin. Doc. 57 ¶ 11. It provides general contracting, construction management, and design/build services around the country. Ireland Aff. (doc. 202) ¶ 5; Ex. A to Ireland Aff. (doc. 203 at PageID 1548-61). Hunzinger has no regular contacts with the State of Ohio: it does not own any property or have offices in Ohio; has never provided or contracted to supply goods or services in Ohio; has no employees or agents in Ohio; has not applied for any licenses or permits in Ohio; does not own or control any bank accounts in Ohio; and has never solicited or been involved in any construction or development projects in Ohio. Klein Aff. (doc. 141-2) ¶ 6. With respect to this lawsuit, Hunzinger was involved only in the construction of the apartment buildings at the Bayshore Town Center in Wisconsin. Steiner initiated contact and interviewed

10

Hunzinger officials at its offices in Wisconsin. Hunzinger Aff. (doc. 141-3) ¶ 6. Hunzinger claims "[v]irtually all of the Bayshore Contract negotiations" took place via telephone and email while it was in Wisconsin. *Id.* ¶ 11. The contract was signed by Hunzinger's President in Wisconsin. *Id.* ¶ 13. All its services, labor and materials for the Bayshore project were furnished or provided in the State of Wisconsin. Doc. 141-2 ¶ 7. Further, all of Hunzinger's current employees who participated in the Bayshore project reside in the State of Wisconsin. *Id.* ¶ 9. Finally, the contract contains a Wisconsin choice-of-law of provision. *Id.* ¶¶ 12-13.

Nonetheless, Third-Party Plaintiffs claim Hunzinger is subject to the jurisdiction of Ohio because it provided services to, and/or contracted with, Bayshore and Steiner (both of which have their principal places of business in Columbus, Ohio). *See* doc. 252 at PageID 2385-87. They specifically rely on the following facts: (1) Hunzinger entered into a contract with Bayshore -- that was amended sixteen times and ultimately valued at $104,604,559, *see* doc. 202 ¶¶ 6, 11; (2) before their contract was executed, Hunzinger's President and other "key employees" traveled to Columbus, Ohio to tour a model town center (the Easton Mall), doc. 141-3 ¶ 7; doc. 202 ¶ 8; (3) negotiations for the contract occurred via telephone between Ohio and Wisconsin, doc. 202 ¶ 7; (4) the cover page of the contract listed Bayshore's Ohio address, doc. 203 at PageID 1562; (5) during the three-year term, Hunzinger "submitted and provided routine and systematic communication about design documents, engineering plans, payment applications, and change orders via email, via telephone, via videoconference and in person" to Bayshore's and Steiner's office in Columbus, *id.* ¶ 9; (6) the analysis and processing of these documents occurred in Wisconsin and Ohio, *id.*; and (7) Hunzinger received checks from Bayshore with its Ohio address, doc. 202 ¶ 13.

Another example of a "direct contractor" Third-Party Defendant is Walton Construction Company, LLC ("Walton"). Walton is a Kansas limited liability company with its principal place of business in Kansas City, Missouri. Doc. 57 ¶ 24. Like Hunzinger, it does not have any regular contacts with Ohio. It was brought into this lawsuit solely because it provided construction services to Zona Rosa in Kansas City, Missouri. Third-Party Plaintiffs assert jurisdiction over Walton based on the following facts: (1) Walton entered into several agreements with Zona Rosa -- which were performed over seven years, *see* Gibb Aff. (doc. 299-3); (2) the negotiations occurred in-person, on the telephone, and via email in Columbus, Ohio and Missouri, *id.* ¶ 5; (3) Walton representatives visited Ohio "[o]n at least one occasion during the negotiation and/or scope of the agreements," *id.* ¶ 7; (4) a representative of Zona Rosa signed the agreements in Ohio, *id.* ¶ 5 (but Walton signed the agreements in Missouri, Foster Aff. (doc. 247-1) ¶ 5); (5) Walton was paid $69,278,188 under their agreements, Wedekind Aff. (doc. 299-1) ¶ 6; (6) Walton submitted payment applications that included the contract scope to, and received checks from, Zona Rosa's Ohio address, *id.* ¶¶ 5-6; and (7) the documents submitted by Walton to Zona Rosa were analyzed and processed in Missouri and Ohio, *id.* ¶ 5; doc. 299-3 ¶¶ 5-6.

### B. "Sub-Contractors"

The Third-Party Defendants in the second category of "sub-contractors" have even less contacts with the State of Ohio. Although they technically entered into a contract with an Ohio entity, they dealt primarily with a local construction company during contract negotiations. Miller's Carpet Company, Inc. ("Miller's Carpet") is one example. It is a small, family-owned Wisconsin-based business. Miller Aff. (doc. 336-1) ¶ 5. Miller's Carpet does not have any regular contacts with Ohio, and does not solicit or conduct in business in Ohio. *Id.* ¶ 6. Its only

relation to Ohio is that it entered into a contract with Bayshore (who has its principal place of business in Ohio) to provide construction services for the Bayshore Town Center in Wisconsin. *Id.* ¶ 7.  Mandel Development, Inc. or its affiliate Mandel Group, Inc. (both Wisconsin corporations) (collectively "Mandel") -- and not Bayshore -- contacted Miller's Carpet.  *Id.* ¶¶ 9-10.  Further, Mandel handled the negotiations and subsequent modifications for the Bayshore contract.  *Id.* ¶ 15.  Miller's Carpet also directed its requests for payment to Mandel.  *Id.* ¶ 18.

Bayshore points to the following facts to support its assertion of personal jurisdiction over Miller's Carpet:  (1) it entered into a contract with Bayshore, doc. 336-1 ¶ 11; (2) Miller's Carpet was paid $315,992 under the contract, Wedekind Aff. (doc. 343-2) ¶ 6; (3) Bayshore's representatives executed the contract and two of the change orders in Ohio, *id.* ¶ 5, Furukawa Aff. (doc. 343-1) ¶ 4; (4) Bayshore issued payments to Miller's Carpet, doc. 343-2 ¶ 7; (5) during the term of the contract, Miller's Carpet "routinely submitted and provided pay applications that included contract scope, and change orders to the construction manager [Mandel,] who then presented all of those materials to Bayshore for approval," doc. 343-1 ¶ 5; and (6) these documents were analyzed and processed in Wisconsin and Ohio, doc. 343-2 ¶ 5.

Blake-Stevens Wood Flooring, Inc. ("Blake-Stevens") is another example of a "sub-contractor" Third-Party Defendant.  It is, likewise, a Wisconsin corporation with its principal place of business in Wisconsin.  Doc. 57 ¶ 8.  It has no regular contacts with Ohio.  *See* Schoonover Aff. (doc. 194-1) ¶¶ 3-17.  Blake-Stevens was brought into this lawsuit because it entered into a contract with Bayshore to provide wood flooring supplies for the apartment buildings at the Bayshore Town Center.  Blake-Stevens did not initiate the contract dealings with Bayshore.  Rather, Mandel Development identified and introduced Blake-Stevens to Bayshore.  Doc. 194-1 ¶¶ 18; Wedekind Aff. (doc. 266-1) ¶ 9.  All negotiations were conduct via telephone,

facsimile and email while Blake-Stevens was in Wisconsin.  Doc. 194-1 ¶ 20.  Further, Blake-Stevens signed the agreement in Wisconsin.  *Id.* ¶ 21.  The contract contained a Wisconsin choice-of-law provision.  Doc. 194-2 at PageID 1437.

Bayshore relies on the following facts to assert personal jurisdiction:  (1) Blake-Stevens entered into a contract with Bayshore that was performed over one year, *see* doc. 194-1 ¶ 21; doc. 266-1 ¶ 7; (2) the contract and its amendments identified Bayshore's Ohio address, doc. 266-1 at PageID 2605-06; (3) a Bayshore representative executed the contract in Ohio, Furukawa Aff. (doc. 266-2) ¶ 4; (4) Blake-Stevens was paid $44,263 by Bayshore under the contract, doc. 266-1 ¶ 6; (5) Blake-Stevens identified an Ohio address on its invoices, *id.* at PageID 2607-09; (6) "[d]uring the term of the Contract, [Blake-Stevens] routinely submitted and provided pay applications that included the contract scope, and change orders to the construction manager [Mandel,] who then presented all of those materials to Bayshore for approval," *id.* ¶ 5; (7) "[s]ome communications such as invoices were provided directly to Steiner," *id.*; and (8) the analysis and processing of these documents occurred in Wisconsin and Ohio, *id.*[11]

---

[11] Third-Party Plaintiffs attempt to further establish personal jurisdiction over some Third-Party Defendants based on their Internet websites.  They claim Hunzinger's website announces that it has provided construction services in multiple states (but does not mention Ohio), *see* doc. 201 at PageID 1532; and Roman Electric's website contains a positive review it received from Corna/Kokosing Construction Co. and Steiner of Ohio.  Doc. 454 at PageID 5044.  Similarly, they claim the websites of Donovan & Jorgenson and Alpine Insulation allow potential out-of-state customers to input their mailing address, and potential out-of-state employees to apply for a job. *See* doc. 453 at PageID 5026; doc. 455 at PageID 5076-77.  The existence of these websites does not change the Court's analysis.  Notably, Third-Party Plaintiffs have not alleged that any Ohio resident actually used their websites.  *Cf. Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 678 (6th Cir. Ohio 2005) (finding there was no personal jurisdiction over a defendant based on its website because the plaintiff did not allege any interaction or exchange of information via the website with an Ohio resident).  As explained by the Sixth Circuit in *Neogen Corp.*, "The maintenance of [a] website, in and of itself, does not constitute the purposeful availment of the privilege of acting in [the forum state].  An Internet website by its very nature can be accessed internationally.  By maintaining a website in [another state], [a defendant] is no more benefitting from the laws of [the forum state] than from the laws of any other state.  The level of contact with a state that occurs simply from the fact of a website's availability on the Internet is therefore an 'attenuated' contact that falls short of purposeful availment."  282 F.3d at 890.  Further, "a website that permits users to

### III.  Personal Jurisdiction Analysis

In determining whether personal jurisdiction exists over a defendant, the Court applies Ohio law subject to due process limitations.  *See Conn v. Zakharov,* 667 F.3d 705, 711 (6th Cir. 2012).  Thus, the Third-Party Defendants "must be (1) subject to long-arm jurisdiction under one of the enumerated bases of jurisdiction in Ohio's long-arm statute *and* (2) jurisdiction must accord with Due Process."  *Id.* at 713 (emphasis in original).  As set forth more fully below, even construed in the light most favorable to Third-Party Plaintiffs, the alleged facts are insufficient to confer jurisdiction over Third-Party Defendants under both requirements.

### A.  Ohio's Long-Arm Statute

The Court's analysis with respect to Ohio's long-arm statute is "a particularized inquiry wholly separate from the analysis of Federal Due Process law."  *Conn*, 667 F.3d at 712.  Ohio's long-arm statute, Ohio Revised Code § 2307.382, enumerates nine categories of conduct that subject a person to personal jurisdiction in Ohio when the cause of action arises out of such conduct.  *See id.*  Third-Party Plaintiffs argue that jurisdiction over Third-Party Defendants is appropriate under the first subsection:  "[t]ransacting any business in this state."[12]  Ohio Rev. Code § 2307.382(A)(1).

### 1.  "Transacting Any Business" Prong

The Ohio Supreme Court has defined "transacting any business" as "to carry on business" and "to have dealings," and as "broader" than the word "contract."  *Goldstein v. Christiansen*, 638 N.E.2d 541, 544 (Ohio 1994).  Two factors help determine whether an out-of-state defendant "transacted business" within the meaning of Ohio's long-arm statute: (1) whether

---

contact the company through an on-line form are simply insufficient contacts . . . to satisfy due process."  *See, Inc. v. Imago Eyewear Pty, Ltd.*, 167 F. App'x 518, 523 (6th Cir. 2006).

[12] Third-Party Plaintiffs' brief contention that Third-Party Defendants' conduct satisfies the second subsection of Ohio's long arm statute -- "contracting to supply services" in Ohio -- is unpersuasive.  *See* doc. 201 at PageID 1537-38; *see also* Ohio Rev. Code § 2307.382(A)(2).

the non-resident initiated the business dealing; and (2) whether the parties conducted their negotiations or discussions in Ohio, or with terms affecting Ohio. *See e.g., Specialized Mach. Hauling & Rigging, LLC v. D&L Transp., LLC*, No. 3:08-cv-445, 2009 U.S. Dist. LEXIS 37234, at *15-17, 2009 WL 1045908, at *6 (S.D. Ohio Apr. 20, 2009) (Rose, J.); *Katz v. Meli Invs., LLC*, No. 3:08-cv-299, 2009 U.S. Dist. LEXIS 1246, at *11-13, 2009 WL 81149, at *4-5 (S.D. Ohio Jan. 9, 2009) (Rose, J.); *Shaker Constr. Grp., LLC v. Schilling*, No. 1:08-cv-178, 2008 U.S. Dist. LEXIS 79645, at *9, 2008 WL 4346777, at *3 (S.D. Ohio Sept. 18, 2008) (Dlott, J.). In addition to these factors, the plaintiff must also demonstrate that "there is a substantial connection between the defendant and the forum state." *Shaker Constr.*, 2008 WL 4346777, at *3.

Both of those factors weigh against a finding that Third-Party Plaintiffs transacted business in Ohio. The only basis for subjecting them to the jurisdiction of this Court is that they entered into a contract with a company that has its principal place of business in Ohio -- to perform services and/or provide goods in a different state (Wisconsin or Missouri). With respect to the first factor, nowhere have Third-Party Plaintiffs demonstrated that Third-Party Defendants initiated the dealings. To the contrary, the record shows that Third-Party Defendants were approached by Bayshore, Zona Rosa, Steiner, and/or their representative(s) to discuss entering into an agreement.

As for the second factor, while Third-Party Plaintiffs demonstrated that some Third-Party Defendants (in the "direct contractors" category) visited Ohio on one or more occasions, the record reveals that the vast majority of the negotiations were conducted via telephone and email while Third-Party Defendants were in their home states. In fact, Bayshore and Zona Rosa had representatives on-site in Wisconsin and Missouri, where many business dealings occurred.

Moreover, the terms of Third-Party Defendants' agreements with Third-Party Plaintiffs do not substantially affect Ohio given that they were performed outside of Ohio.

Accordingly, the Court finds that Third-Party Defendants did not "transact any business" in Ohio to be subject to the Court's jurisdiction under Ohio's long-arm statute. *Cf. Katz*, 2009 WL 81149, at *6-8 (finding there was no personal jurisdiction over the non-resident defendants that had no contacts with Ohio other than initiating and discussing business transactions with the Ohio plaintiff via email and telephone, and where the real estate project that was the subject of the litigation was located in Louisiana); *Shaker Constr.*, 2008 WL 4346777, at *3 (determining there was no personal jurisdiction over a non-resident defendant that did not initiate the negotiations, where the terms of the agreements did not affect Ohio, and the project that was the subject of the agreement was located in Mississippi).

### 2. "Arising From" Prong

Moreover, even assuming, *arguendo*, that Third-Party Plaintiffs met their burden in proving that Third-Party Defendants "transacted business" in Ohio, they have still not satisfied Ohio's long-arm statute because their causes of action do not arise from those alleged limited contacts with Ohio. *See* Ohio Rev. Code § 2307.382(C) ("When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him"). Ohio's long-arm statute requires a "proximate cause"[13] relationship -- which is greater than a "but for" relationship -- between the plaintiff's cause of action and the defendant's conduct in Ohio. *Brunner v. Hampson*, 441 F.3d 457, 465-66 (6th

---

[13] "Ohio law says proximate cause exists 'where an act or failure to act, in a natural and continuous sequence, directly produces the injury and without which it would not have occurred.'" *Signom v. Schenck Fuels, Inc.*, No. 3:07-cv-37, 2007 WL 1726492, at *4, 2007 U.S. Dist. LEXIS 42941, at *11 (S.D. Ohio June 13, 2007) (Rose, J.) (citation omitted).

Cir. 2006) (applying the Ohio Supreme Court's decision in *Goldstein*).   The definition of "arises from" in Ohio's long-arm statute is narrower than under federal due process requirements.  *See id.*; *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 430 (6th Cir. 2006). Accordingly, "personal jurisdiction does not exist [under Ohio's long-arm statute] where the circumstances which may have caused the injury are unrelated to the conduct of business in Ohio." *Signom*, 2007 WL 1726492, at *4.

Third-Party Plaintiffs have not demonstrated how Third-Party Defendants' actions in Ohio proximately caused their injuries in Wisconsin or Missouri.  Their claims are based on Third-Party Defendants' alleged failure to comply with all legal requirements in performing their services *at the project sites*.  *See* docs. 57, 58.  Thus, the Court finds that Third-Party Plaintiffs' causes of actions do not arise from Third-Party Defendants' alleged contacts in Ohio and, therefore, they would not be subject to jurisdiction under Ohio's long-arm statute even had their conduct constituted "transacting business."  *See* Ohio Rev. Code § 2307.382(C).  *Cf. Brunner*, 441 F.3d at 466-67 (finding that the plaintiffs' claims did not "arise from" the defendants' transaction of business, as required by Ohio's long-arm statute, because plaintiffs' injuries allegedly arose from the condition of facilities and equipment in Canada, and not from the defendant's advertising or solicitation of business in Ohio); *Franklin Prods., Inc. v. Gen. Nutrition Corp.*, No. 2:05-cv-1061, 2007 U.S. Dist. LEXIS 63001, at *18-21, 2007 WL 2462665, at *5-6 (S.D. Ohio Aug. 27, 2007) (Frost, J.) (finding that the plaintiff's breach of fiduciary duty claims did not arise from the defendant's business transactions in Ohio because it was the defendant's acts/omissions in Pennsylvania that proximately caused plaintiff's injuries).

### B.  Federal Due Process Analysis

Alternatively, these thirteen Third-Party Defendants should be dismissed because, given their limited number of contacts with Ohio, it would not comport with federal due process for the Court to exercise personal jurisdiction over them.  There are two kinds of personal jurisdiction: general and specific.  *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002).  General jurisdiction exists when "a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state."  *Id.* (citation omitted).  The Court will not consider the exercise of general jurisdiction here because (1) though Third-Party Plaintiffs do not explicitly state so, based on their arguments in their opposition memoranda, it is evident that they are arguing specific jurisdiction, *see, e.g.*, docs. 251, 252, 266, 455; and (2) it is not clear whether Ohio recognizes general jurisdiction over non-residents.  *See Conn*, 667 F.3d at 717-18.

The Court finds that specific jurisdiction over Third-Party Defendants -- which occurs when the lawsuit arises from the defendant's contacts with the forum state -- has not been established either.  *Id.* at 713.  "[T]he crucial federal constitutional inquiry is whether, given the facts of the case, the nonresident defendant has sufficient contacts with the forum state that the district court's exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'"  *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The Sixth Circuit employs a three-part test, established in *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968), to determine whether specific personal jurisdiction over a defendant is proper:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial

enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*Id*.

Here, the Court finds that Third-Party Plaintiffs have failed to satisfy the first prong (purposeful availment) as to all Third-Party Defendants. This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts.'" *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721-22 (6th Cir. 2000) (citation omitted). Third-Party Plaintiffs assert that Third-Party Defendants purposefully availed themselves of the privileges and benefits of acting in Ohio by (1) entering into a contract with an Ohio-based company; (2) making telephone calls and sending emails to Ohio; (3) physically travelling to Ohio; (4) sending payment applications and other contract-related documents to Ohio; and (5) receiving payment from Ohio. *See supra*.

The Court finds these contacts insufficient. Merely entering into a contract with an individual or entity from the forum state does not subject a defendant to jurisdiction in that state. *See Calphalon*, 228 F.3d at 722; *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 151 (6th Cir. 1997). Likewise, communicating with a party in Ohio via email and telephone does not constitute "purposeful availment." *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1119 (6th Cir. 1994) ("[T]he use of interstate facilities such as the telephone and mail is a 'secondary or ancillary' factor and 'cannot alone provide the minimum contacts required by due process'") (citation omitted); *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1177 (6th Cir. 1992). Further, receiving checks from Ohio does not subject a defendant to personal jurisdiction. *See Mahler v. Startari*, 142 F. App'x 839, 842 (6th Cir. 2005); *Paglioni & Assocs., Inc. v. WinnerComm, Inc.*, No. 2:06-cv-276, 2007 U.S. Dist. LEXIS 18612, at *11, *19, 2007 WL 852055, at *7 (S.D. Ohio Mar. 16, 2007) (Graham, J.).

The Court finds the facts in this case analogous to the Sixth Circuit's decision in *Calphalon*. There, personal jurisdiction was found lacking over the non-resident defendant corporation, Rowlette & Associates, despite the fact that Rowlette had been in an eighteen-year agreement with Calphalon (an Ohio corporation). Under the terms of their agreement, Rowlette was the exclusive manufacturer's representative for Calphalon in five states other than Ohio. *Calphalon*, 228 F.3d at 720-23. The court noted that, during the term of their agreement, Rowlette corresponded with Calphalon in Ohio via telephone, fax and mail, and made two physical visits to Ohio. *Id.* Further, the parties' agreement contained an Ohio choice-of-law provision. *Id.* Based on these facts, the Sixth Circuit concluded that Rowlette had not purposefully availed itself of the benefits of doing business in Ohio, explaining as follows:

> Rowlette's performance of the agreement was not focused on exploiting any market for cookware in the state of Ohio. Moreover, Rowlette's phone, mail, and fax contact with Calphalon in Ohio and J. Rowlette's physical visits there occurred solely because Calphalon chose to be headquartered in Ohio, not because Rowlette sought to further its business and create "continuous and substantial" consequences there. Arguably, Rowlette would have served as Calphalon's representative in the designated states, regardless of Calphalon's base of operation. Thus, Rowlette's contacts were precisely the type of "random," "fortuitous," and "attenuated" contacts that the purposeful availment requirement is meant to prevent from causing jurisdiction.

*Id.* at 723.

The same analysis applies to the Third-Party Defendants at issue here. The evidence does not show that they were attempting to further their business contacts in Ohio. To the contrary, their contacts with Ohio "occurred solely because [Third-Party Plaintiffs] chose to be headquartered in Ohio." *Id.* They would have likely entered into the same agreements to perform construction services regardless of the location of Third-Party Plaintiffs' principal place of business.

Therefore, having found that Third-Plaintiffs failed to satisfy the first prong of the *Southern Machine* test, there is no need to address the remaining two prongs. *Accord LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1303 (6th Cir. 1989) (The "failure to meet any one of the three [prongs of the *Southern Machine* test] means that personal jurisdiction may not be invoked").

## IV. Conclusion

In conclusion, the Court finds that Third-Party Plaintiffs have failed to satisfy their burden of making a *prima facie* showing of personal jurisdiction over the thirteen Third-Party Defendants at issue. Contrary to their assertions, Third-Party Defendants did not waive their rights to raise a lack-of-personal-jurisdiction defense either procedurally or substantively. Further, they are not subject to jurisdiction under Ohio's long-arm statute because they did not "transact any business" in Ohio and the third-party claims against them do not "arise from" their contacts with Ohio. Alternatively, exercising personal jurisdiction over Third-Party Defendants would not comport with federal due process requirements because they did not purposefully avail themselves of the benefits of Ohio.

**IT IS THEREFORE RECOMMENDED AS FOLLOWS:**

1. Motions to dismiss filed by Alpine Insulation Co., Inc. (doc. 443); Barsto Construction, Inc. (doc. 209); Blake-Stevens Wood Flooring, Inc. (doc. 194); Donovan & Jorgensen, Inc. (docs. 447, 448); Hunzinger Construction Co. (doc. 141); Lakeside Stoneworks, LLC (doc. 200); Mandel Development, Inc. (doc. 179, 180); Mandel Group, Inc. (docs. 179, 180); Mega Industries Corp. (doc. 444); Miller's Carpet Co., Inc. (doc. 336); Rob Ben Construction, LLC (doc. 245); Roman Electric Co., Inc. (doc. 446); and Walton Construction Co., LLC (doc. 247) each be **GRANTED**;

2. The motion to dismiss filed by Alpine Plumbing, Inc. (doc. 169) be **DENIED AS MOOT** in light of the Court's November 13, 2012 Order (doc. 494); and

3.      Third-Party Defendants Alpine Insulation Co., Inc.; Barsto Construction, Inc.; Blake-Stevens Wood Flooring, Inc.; Donovan & Jorgensen, Inc.; Hunzinger Construction Co.; Lakeside Stoneworks, LLC; Mandel Development, Inc.; Mandel Group, Inc.; Mega Industries Corp.; Miller's Carpet Co., Inc.; Rob Ben Construction, LLC; Roman Electric Co., Inc.; and Walton Construction Co., LLC be **DISMISSED WITHOUT PREJUDICE**, and **TERMINATED** as parties upon the docket of this case.

November 16, 2012                                    s/ **Michael J. Newman**
                                                     United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).